Opinion issued March 15, 2016



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00700-CR

———————————

**THERRELL DEWAYNE FELDER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 14CR0283**

---

## MEMORANDUM OPINION

A jury convicted appellant, Therrell Dewayne Felder, of the felony offense

of forgery, enhanced by two prior convictions for drug-related offenses, and the

trial court assessed his punishment at twenty-five years' confinement.[1]  In one point of error, appellant contends that the trial court erred in allowing evidence of an extraneous offense because the prejudicial effect outweighed the probative value of the evidence.  We affirm.

## Background

On December 26, 2013, a man entered the Food King in Texas City and attempted to purchase cigarettes with a $100 bill.  Crystal Morris, the cashier, realized that the bill was counterfeit and notified the store's assistant manager, Anthony Melcher.  Morris testified that the man, whom she recognized as a regular customer, asked her to give him back the bill but Melcher told him that they could not return it to him because it was not real.  When Melcher called the police, the man left the store.

Morris subsequently identified appellant from a photo array as the man who had attempted to pass the counterfeit $100 bill.  Appellant was arrested and charged with forgery.

During voir dire, trial counsel questioned venire members about how a person might be identified as a suspect from surveillance video.  During opening statements, counsel told the jury that "this case is going to result in two things, whether or not the [d]efendant committed an offense and . . . whether or not he

---

[1]     Appellant was convicted of delivery of a controlled substance, namely, cocaine, in 1991, and of possession of a controlled substance in 2009.

2

knew the document was forged," "I believe you'll see an individual in that video who looks nothing like my client other than the fact that they're both black males," and that Morris had initially narrowed her selection of the suspect to two individuals in the photo array and was only 85-90 percent sure that appellant was the suspect when she identified him.

Texas City Police Officer James Patterson testified that he interviewed Morris after the incident and collected the counterfeit bill and the store's surveillance video. On cross-examination, trial counsel elicited testimony from Officer Patterson that Morris's physical description of the suspect consisted of "pretty general characteristics," that "a black male, age 40–45, about 6'2" can be something that can commonly describe individuals in Texas City," and that the clothes reportedly worn by the suspect—a hoodie, blue jeans, and tennis shoes— are items commonly worn by African-Americans in Texas City.

Texas City Police Detective Jeffrey Baugh, a financial crimes investigator, conducted the investigation of the case. Detective Baugh testified that he forwarded still images of the suspect obtained from the store's surveillance video to members of his department's patrol division as well as an investigative group consisting of detectives and federal agents, and that he received two responses from officers identifying appellant as the suspect. When trial counsel asked

whether it was "clearly apparent to [him] that it was [appellant]" on the surveillance video, Detective Baugh testified that it was not.

On the second day of trial, and outside the presence of the jury, the State argued that it should be allowed to introduce evidence that appellant had passed a counterfeit $20 bill at the same Food King approximately two months before the charged offense. The State asserted that identity and knowledge that the bill was counterfeit were at issue and, thus, the evidence was admissible as an exception to Rule of Evidence 404(b) prohibiting the admission of character evidence to prove the defendant's character or to show that the defendant acted in conformity with that character. Trial counsel acknowledged that identity was at issue but argued that allowing the extraneous offense evidence without proof beyond a reasonable doubt that appellant had committed the earlier offense would unfairly prejudice appellant. Concluding that the defense's argument went to the weight rather than the admissibility of the evidence, and that the probative value of the evidence outweighed the danger of unfair prejudice, the trial court allowed the State to introduce evidence of the extraneous offense.

Ashley Munoz, a former cashier at the Food King in Texas City, testified that appellant came into the store on the evening of October 20, 2013, and purchased produce with a $20 bill. After appellant left, Munoz realized that he had given her a counterfeit bill and called her supervisor, Melchor. Munoz later

4

identified appellant from a photo array as the man who had passed the $20 counterfeit bill at the Food King on October 20, 2013. Munoz also identified appellant in court.

The jury found appellant guilty of the charged offense. At the conclusion of the punishment phase, the trial court assessed his punishment at twenty-five years' confinement. Appellant timely filed this appeal.

## Discussion

Appellant contends that the trial court erred in allowing the extraneous offense evidence because (1) the evidence was not relevant to a material issue in dispute and (2) the prejudicial effect of the evidence outweighed its probative value.

### A. Standard of Review and Applicable Law

We review a trial court's admission of extraneous evidence under an abuse of discretion standard. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and we will uphold the ruling. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *Jabari v. State*, 273 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Rule of Evidence 404(b) prohibits the admission of an extraneous offense at trial to prove a defendant's character or to show that the defendant acted in

5

conformity with that character. TEX. R. EVID. 404(b); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). Extraneous offenses may, however, be admissible for other purposes, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b); *Jabari*, 273 S.W.3d at 751.

Where the State uses an extraneous offense to prove identity, the extraneous offense must be so similar to the charged offense that it illustrates the defendant's "distinctive and idiosyncratic manner of committing criminal acts." *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (en banc) (quoting *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005)). In reviewing a trial court's decision to admit such evidence, appellate courts should take into account the specific characteristics of the offenses and the time interval between them. *Thomas v. State*, 126 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Sufficient similarity may be shown by proximity in time and place *or* by a common mode of committing the offenses. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).

Rule of Evidence 403 provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusion of the issues, or misleading the jury . . . ." TEX. R. EVID. 403; *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (citing *Montgomery*,

810 S.W.2d at 387). Courts should consider the following factors under a Rule 403 analysis: (1) the strength of the extraneous offense evidence to make a fact of consequence more or less probable; (2) the potential of the extraneous offense to impress the jury in some irrational but indelible way; (3) the time during trial that the State requires to develop evidence of the extraneous misconduct; and (4) the need by the State for the extraneous evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). Thus, evidence is admissible when the prosecution can show both that the offense or transaction is relevant to a material issue in the case, and the probative value of the evidence to the trier of fact is not outweighed by its prejudicial or inflammatory nature. *Parks v. State*, 746 S.W.2d 738, 740 (Tex. Crim. App. 1987) (referring to two-pronged test established in *Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983)).

## B. Analysis

Appellant first contends that the trial court erred in admitting the extraneous offense under Rule 404(b) because such evidence was not relevant to a material issue in dispute in the case. He argues that although the "transactions involved were nearly identical," the evidence did not show that he committed the October 2013 offense.

As previously noted, an extraneous offense may be admissible to prove identity. TEX. R. EVID. 404(b). Appellant has acknowledged, both at trial and on

7

appeal, that identity was an issue in this case. Contrary to appellant's contention that there is no evidence that he committed the October 2013 offense, the record reflects that Munoz positively identified him in a photo array and in court as the man who passed the counterfeit $20 bill at the Food King on October 20, 2013. Further, as appellant acknowledges, the offenses "were nearly identical." The charged offense was committed at the same store and approximately two months after the extraneous offense. *Lane*, 933 S.W.2d at 519 (noting sufficient similarity may be shown by proximity in time and place). Taken together, they showed that it was more likely than not that appellant was the person who committed the charged offense. Therefore, the extraneous offense was relevant to a material element of the State's case, i.e., identity.

Appellant also contends that the extraneous offense evidence was inadmissible under Rule 403 because admission of the evidence only served to inflame the jury. Under a Rule 403 analysis, we first consider the strength of the extraneous offense evidence to make a fact of consequence more or less probable. *See Jabari*, 273 S.W.3d at 751. Here, it is undisputed that appellant made identity an issue at trial. Morris testified that a man whom she recognized as a regular customer attempted to pass a $100 counterfeit bill to purchase cigarettes at the Food King in Texas City on December 23, 2013. Morris identified appellant as the perpetrator in a photo array as well as in court. Munoz testified that a man who

8

was a regular customer purchased produce with a counterfeit $20 bill from the same Food King on October 20, 2013. Munoz also positively identified appellant from a photo spread as well as in court. Trial counsel attempted to impeach Morris by eliciting testimony that she initially identified two possible suspects and was only 85–90% sure of her identification, thus providing the State with a reason to develop extraneous offense evidence. The charged offense was committed at the same store and approximately two months after the extraneous offense, and Munoz identified appellant as the perpetrator in the earlier incident, making Morris's identification of appellant more probable. *Lane*, 933 S.W.2d at 519 (noting sufficient similarity may be shown by proximity in time and place).

The admission of a similar extraneous offense carries a risk of irrationally impressing the jury of a defendant's character conformity, which the law seeks to avoid. *Jabari*, 273 S.W.3d at 753. The impermissible inference of character conformity can be minimized, however, with a limiting instruction. *Lane*, 933 S.W.2d at 520. Here, the trial court instructed the jury on the purposes for which the extraneous offense evidence could be considered. Further, the testimony regarding the extraneous offense—approximately 19 of the 153 page record—did not take up a significant portion of the trial and the amount of time used for the testimony was reasonable and not excessive.

Finally, the defense attempted to impeach Morris regarding her identification of appellant, pointing out that she had initially identified two suspects in the photo array and that she was not 100% sure of her identification. Further, trial counsel repeatedly suggested to the jury, in cross-examination of the witnesses as well as opening and closing arguments, that the person seen on the surveillance video was not appellant. Thus, the extraneous offense was significant to the State's case.

Further, in cases of forgery and fraud, intent is always an issue. *Parks*, 746 S.W.2d at 740; *Robledo v. State*, 480 S.W.2d 401, 402 (Tex. Crim. App. 1972). The Court of Criminal Appeals has held that intent or guilty knowledge cannot be inferred from the mere passing of a forged instrument. *Parks*, 746 S.W.2d at 740; *Albrecht v. State*, 486 S.W.2d 97, 102 (Tex. Crim. App. 1972). Establishing intent in such cases is crucial to avoid criminalizing an innocent act when a person unknowingly and accidentally passes a forged instrument. *See Parks*, 746 S.W.2d at 740. This is such a difficult issue in forgery cases that, as a practical matter, evidence of extraneous offenses is nearly always admissible. *Id.*

The trial court was within the zone of reasonable disagreement when it ruled that the extraneous offense was relevant to material issues in the case and the probative value of the evidence was not substantially outweighed by the danger of

unfair prejudice. Thus, we hold that the trial court did not abuse its discretion in admitting the evidence. We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

Panel consists of Justices Bland, Brown, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).